UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 113C 1:14CR20642

FILED by ___ D.C.

FEB 1 3 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA - MIAMI

UNITED STATES OF AMERICA

v.

TIMOTHY MIERS

_____/

## MOTIONS FOR JUDGMENT OF ACQUITTAL, NEW TRIAL
## AND FOR TRANSCRIPTS AND CONTINUANCE (ALTERNATIVELY)
### (Fed. R. Crim. P. 29 and 33)

COMES NOW, Defendant Timothy Miers ("Defendant" or "Defense" or "Mr. Miers") and respectfully files his motions for judgment of acquittal or new trial, or, alternatively, for immediate delivery of transcripts and continuance of the sentencing proceeding. (Hereinafter "Motions.") The Motions are filed to prevent ineffective assistance of counsel inasmuch as counsel Anthony Natale is absent and has misled Mr. Miers by telling him that these Motions were on file and the transcripts ordered for sentencing when -- Mr. Miers has just learned -- such representations are entirely untrue.

I.   INTRODUCTION

Counsel Mr. Natale conducted more than 30 meetings with Defendant at which significant voluminous evidence and extensive caselaw were reviewed and a complete defense to all charges built. These were not five minute meetings but were extensive and far reaching. Mr. Natale advanced virtually none of this at trial, leading to the conviction on all counts of crimes that nevertheless could not possibly have been committed based upon the undisputed evidence that was actually admitted. Witnesses gave false testimony, and exonerating evidence was withheld with the full knowledge and ratification of the government. Mr. Miers is entitled to either judgment of acquittal or a new trial based upon the numerous issues raised herein. In the event the Court disagrees, the Defense is entitled to the transcripts and a continuance of the sentencing given the life sentence effectively requested by the government as compared to the significant bases for relief proven below.

-1-

These Motions are filed to prevent ineffective assistance of counsel. Mr. Natale visited Defendant right after the trial and said "I (Natale) was ineffective and I cannot yet tell you what happened, but if you want I will testify to it all and get you a new trial." He further maintained, however, that Mr. Miers is entitled to at least a new trial -- and probably judgment of acquittal -- based upon controlling law in this Circuit as applied to the facts of this case. Mr. Natale represented that he had obtained the transcripts and was submitting Rule 29 and Rule 33 motions, however, that was more than one month ago and Defendant files these Motions to avoid the continued ineffective assistance Mr. Natale has already admitted to.

II. DEFENDANT IS ENTILED TO JUDGMENT OF ACQUITTAL

The Defense respectfully submits there was insufficient evidence for a rational juror to find him guilty of the crimes charged in the indictment beyond a reasonable doubt or under any standard. Knowing this would be the result, the government engaged in a trial of character assassination involving prior alleged acts with stories about multiple murders and other incredible acts. However, the law is clear that such prior alleged crimes has nothing to do with satisfying the elements of the offenses charged. Mr. Miers did not testify at trial and thus the prior averments could not be used to attack his credibility as a witness. Rather, the evidence of them was nothing more than a dirty-up campaign to misdirect the jury's attention away from the evidence at hand so that they would ignore it and return an impassioned verdict of guilty irrespective of the law and the facts. Even viewing the evidence in the light most favorable to the government -- required as the Rule 29 standard -- no rational juror could have convicted Mr. Miers and he is entitled to judgment of acquittal. See, e.g., United States v. Gari, 572 F.3d 1352, 1359 (11th Cir. 2009).

The Defense respectfully contends that if this Court has any disinclination to render judgment for Mr. Miers, it should nevertheless provide transcripts since the errors at the trial set forth below are shown to be merely the tip of the iceberg.

A. 18 U.S.C. § 2261(a)(1)

In order to convict Mr. Miers under Section 2261(a)(1), the government must prove beyond a reasonble doubt that a significant or motivating purpose of the travel across a state line was to engage in the illegal conduct -- in this case alleged to be domestic battery -- which has been held to mean

that the illegal conduct alleged must not have been merely incidental to the trip. See, e.g., United States v. Hayward, 359 F.3d 631 (3d Cir. 2004).

The evidence at trial was undisputed that Mr. Miers travelled on the same routes to the same cities through the same toll plazas in the discharge of his business responsibilities as an interstate trucker. This fact was corroborated by the police officers from Georgia and Florida and by JCM herself. It was undisputed. Regardless of what the government says about the conduct of Mr. Miers as evidenced by their statements at trial, it is abundantly clear that constitutional violations under Napue v. Illinois [360 U.S. 264 264 (1959)] permeated this trial and that no reasonable juror could have convicted him under subsection (a)(1) if the alleged conduct was merely incidental to business travel. All of the reported cases under subsection (a)(1) involve the defendant traveling interstate to the location of the victim to commit the violent offense, however, in this case we have JCM traveling alongside Mr. Miers to and from Florida before the acts in question with video of her dancing and laughing at the time she was supposed to have been beaten and repeatedly assaulted. There is no rational juror who could have reasonably found the interstate travel was a necessary part of the crime or that Mr. Miers was going to get JCM. Accordingly, judgment of acquittal must be entered as to Count Two of the indictment under Section 2261 (a)(1).

    B.   18 U.S.C. § 2261(a)(2)

Section (a)(2) is closely related to (a)(1), however, the emphasis is not so much on the interstate commerce element as it is on the government's burden of proving some duress or fraud as the unlawul force from which the victim ended up traveling with the defendant in interstate commerce. See, United States v. Dowd, 417 F.3d 1080, 1086-1087 (9th Cir. 2005); United States v. Helem, 186 F.3d 449, 453 (4th Cir. 1999).

The evidence at trial was inadequate to meet this burden. It was undisputed that JCM was not only a willing participant in the travel but actually that Mr. Miers and JCM reported to nearly a dozen people that they were on their way home. Furthermore, the evidence is also unrebutted that Mr. Miers attempted to put JCM on a bus to transport her back home. He viewed their relationship as being over, and it was only then that JCM made up this tale about cross-country rape and assaults which she first alleged began in July, 2013 (DE 2) and then at trial alleged began a month later.

JCM testified she was being beaten and violently raped as of August 19, 2014, yet inexplicably the video of that date shown at trial depicted her happy, joking without a mark on her, let alone a bruise. The case is so weak that JCM actually admitted on cross-examination that she wanted to "make up" with Mr. Miers on August 19, 2013 and willingly got into his truck (JCM was "still hoping" to "make up"). The government's claim that a woman seen on tape willingly getting into a truck could have been coerced to do so is ludicrous, but suffice to say that the evidence is overwhelming that there was no duress or fraud proven at trial sufficient to explain JCM's behavior. The only reasonable explanation for her behavior is that she acted purely of her own free will, because she wished to be in a relationship with Mr. Miers. Judgment of acquittal must be given as to the Third Count of the Indictment because the charge simply cannot be sustained.

C.   18 U.S.C. § 1201 - Kidnapping

The kidnapping count (Count I) is the most preposterous. Section 1201 adds an element not only not proven in this case but one that the government did not even attempt to prove. That is, in order to sustain a charge of kidnapping, the government must establish that the defendant "held" the victim "for ransom, reward or otherwise," the critical word being "held." See, United States v. Larsen, 615 F.3d 780, 787 (7th Cir. 2010); United States v. Lankford, 196 F.3d 563, 576-578 (5th Cir. 1999). The record is devoid of any evidence that JCM was being held against her will since the videos and her testimony indisputedly show her as the most willing of participants with every opportunity to leave and -- at the critical moment -- hoping to "make up" with Mr. Miers. JCM's summary testimony that it was never "the right time" to take action is not enough to defeat the evidence under controlling law in this Circuit. Indeed, this case is on all fours with the Eleventh Circuit Court of Appeals decision to reverse a Florida district judge's refusal to grant judgment of acquittal in the kidnapping case of United States v. Chancey, 715 F.2d 543 (11th Cir. 1983).

In Chancey, the defendant Clarence Chancey was accused of kidnapping a 17-year old teenage girl under a cloud of suspicious testimony of the alleged victim eerily similar to those of JCM in this case. Mr. Chief Justice Coleman recounted a long distance trip throughout Florida and onto California in which

-4-

the alleged victim and Mr. Chancey at times go along fine so that at times "things became more amicable." Id. at 545. During the trip, Mr. Chancey took the girl to a campground at which "[t]here were other people around but [the alleged victim] made no outcry and asked for no assistance" nor did she make any "effort to get away."" Id. Further, the alleged victim went to a K-Mart store and "made no effort to let [the salespersons] know that she was being kidnapped, because she was 'too scared.'" Id. JCM's behavior here is far more perplexing than was the minor victim's in <u>Chancey</u>. In this case, JCM testified to traveling with a known interstate trucker Mr. Miers and stopping repeatedly to interact with people who knew them both because of the repeated stops Mr. Miers made to the same places in the course of his trucking routes. It is absolutely inexcusable that the jury could convict Mr. Miers after JCM admitted he tried to get her to take a bus home inasumch as he viewed the relationship over after he began to understand her games. So, what does the United States do? Knowing <u>Chancey</u> has been the law in this Circuit for the past 33 years, the prosecutors indict Mr. Miers for kidnapping anyway and then allow JCM to change her story from "it all started in July, 2013" (DE 2) to her trial story that it all began a month later.

Mr. Chief Justice Coleman said it best in Chancey regarding the standard to be applied in a kidnapping case such as this with completely consensual behavior:

> "[The testimony of the allged victim]"would obviously contain all of the essential elements of the alleged offense. . . .." As far as it goes, this statement is undoubtedly correct. It does not address the problem, however, which arises when the testimony credited by the jury is so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt. <u>The mere fact that testimony is in the record is not enough.</u> If a witness were to testify that he ran a mile in a minute, that could not be accepted, even if un-disptued. If one testified, without dispute, that he walked for an hour through a heavy rain but none of it fell on him, there would be no believers."
>
> . . .
>
> [The alleged victim] is the sole witness to lack of consent. Regardless of what she says, her every act and <u>deed</u>, as she described them, should that when she drove the car across the Florida state line she did it voluntarily. And the same is true from Florida all the way to California and after the travelers arrived there."

Id. at 546-547.

To top it off, JCM drove the truck in this case. No reasonable juror could have concluded the government met the elements for interstate kidnapping, and judgment of acquittal must be entered as to the First Count.

III.   ALTERNATIVELY, THE DEFENDANT IS ENTITLED TO A NEW TRIAL

Mr. Mier is obviously not worried about any new trial because he strongly maintains his innocence. While judgment of acquittal is called for in this case, Mrs. Miers is certainly entitled to a new trial under Rule 33 for the numerous violations of Brady, Napue and Giglio/1 that were presented throughout the proceedings.

A.   Brady Violations

The government violates the defendant's due process rights when it suppresses exculpatory evidence in a manner rendering the verdict unworthy of confidence. See also, United States v. Ramirez, 513 F.2d 72, 88 (5th Cir. 1975) (information accessible to prosecution must be produced under Brady). Furthermore, the prosecution must search the records of law agencies so long as it has access to those records. United States v. Bolen, 285 Fed. Appx. 655 (11th Cir. 2008); Martinez v. Wainwright, 621 F.2d 184 (5th Cir. 1980). In this case, the government is in possession of significant records from Georgia and Florida agencies testifying at trial as well as from the state of New York. Such evidence showed video of JCM and documentation of Mr. Miers' trucking travels with her. It showed certain officers boarding Mr. Miers' truck at weigh stations and witnessing the condition of JCM which the Defense contends was unremarkable and exoneratng. Such evidence would obviously impeach the credibility of the Georgia officer who testified that he never boarded Defendant's truck. There is no distinction between exonerating evidence and impeachment evidence for purposes of Brady. United States v. Bagley, 473 U.S. 667 (1985).

Worse, the government redacted Facebook records that show the testimony of Jose Benton was entirely false. Mr. Benton testifid that Mr. Miers threatened him, however, the Facebook messages showed the opposite and that

_____

1/   Napue v. Illinois, 360 U.S. 264 (1959); Giglio v. United States, 405 U.S. 150 (1972).

Benton's statements before trial -- that Mr. Miers was cordial and non-threatening -- were the truth. Not only is the suppression of Facebook records a violation of Brady, but the existence of the records establishes that Mr. Benton's testimony wsa false and thus was a violation of Napue, and Giglio. See, Section III.B, infra, for a discussion of these claims.

An additional Brady violation arises from the government's withholding of harddrives from Mr. Fuel Truckstop and the fact that the government only relinquished some of them one week prior to trial. Incredibly, the harddrive contains six months of videos showing JCM and Mr. Miers -- twice a week during the summer of 2013 -- laughing and having a ball as a couple traveling willingly together across the eastern coast. The government will be unable to explain why it withheld the hardrive, however, not only could the Defense not properly review the video evidence for trial but they could not review the other evidence until very late in a way in which the Defense was wholly unable to make use of it. At the hearing on these Motions, the Defense will play the videos so the Court can get the full understanding of the exculpatory value of them. See, Kyles v. Whitley, 514 U.S. 419, 437 (1995) (government must search all files to determine whether they contain exculpatory evidence).

These videos are voluminous inasmuch as she was indisputedly traveling with Mr. Miers on business making constant and repeated stops at Mr. Fuel and the conduct captured on video during these stops is the most important evidence not only of her physical condition but of her demeanor. If a picture is worth a thousand words then a video -- made up of countless pictures -- is worth a million words. Mr. Miers was convicted in this case by inconsistent words of a non-independant witness, JCM. He reasonably needed the million pictures to present the truth to the jury for his life. The fact that the female prosecutor in this case finds him abhorrent neither relieves her of her Brady obligations nor does it excuse the other substantial constitutional violations she undertook on her slippery slope. These violations also run afoul of Rule 16 and combine to mandate either a new trial or dismissal of the indictment. See, United States v. Rivera, 944 F.2d 1563, 1566 (11th Cir. 1991) (substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense). Even inadvertence on the government's part is no excuse, and the violation necessarily deprived Mr. Miers

of a fair trial.  See, United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987);  see also, United States v. Camargo-Vergara, 57 F.3d 993 (11th Cir. 1995) (awarding new trial based on government's discovery violations); United States v. Rodriguez, 799 F.2d 649, 654 (11th Cir. 1986) (non-disclosure of documents was reversible error because the defendant did not have the opportunity to meet the evidence).

Importantly, the testimony that Mr. Miers -- as opposed to someone else -- inflicted these beatings is contradicted not only by the videotapes (both disclosed and withheld) but also by undisputed evidence -- never introduced at trial but conceded by the prosecution -- that DNA testing of JCM's blue jeans which she wore at the time reveal the DNA of two men but not that of Mr. Miers.  This is smoking gun evidence that at least one other man inflicted whatever beatings JCM was complaining about in the crude circumstances of her life.  Contrary to her testimony that she was falsely imprisoned -- indeed kidnapped against her will -- she had time to have sex with two other men while she was allegedly held up with Mr. Miers in his truck gallavanting across the country.  Why were these test results not introduced at trial?  Because they were given to the Defense a few days before the start of trial and counsel Mr. Natale advised Mr. Miers that the judicial rulings were "inconclusive" whether they could be used or not.  In response to these Motions, the prosecution is obligated to explain precisely why the DNA results showing either that JCM was a hooker or a perjurer -- i.e., that she had sex with two other men, and probably not Mr. Miers/2 during the period she testified that Mr. Miers was holding her against her will and repeatedly assaulting her -- was not given to the Defense until right before trial when they could not make proper use of it.  In any event, the government's decision to withhold the shocking DNA evidence deprived Mr. Miers of a fundamental right since the government never investigated who these other DNA men were in order to corroborate JCM's story.  See, Kyles v. Whitley, 514 U.S. 419, 475 (1995) ("conscientius investigative work will enhance [the probative force of evidence] and slovenly work will diminsh it"); United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir. 1995) (sloppy police work relevant lineof inquiry when defendant claims "someone else had committed the crime" and defendant "prejudiced by sloppy police work"); United States v. Patrick, 248 F.3d 11, 21 (1st Cir. 2001) ("evidence

---

2/  The rape kit testimony further establishes that JCM's story borders on perjury and was at least false and misleading under Napue.  See, Section III.B infra.

that tends to prove that a person other than the defendant committed the crime is relevant"); Lindsey v. King, 769 F.3d 1034, 1042 (5th Cir. 1985) ("evidence implicating the thoroughness of the [government's] investigation is a relevant line of inquiry under Brady").

     B.   Giglio Violations

     As already shown, this case was based on deception -- slight of hand to dirty up Mr. Miers as a deflection away from weak and at times false evidence.   The words of the district court in the famous case of Imbler v. Craven begin our Giglio analysis:

> "[t]he duty of good faith is not merely a negative one to omit from one's case outright lies.  It imposes as well an affirmative duty to avoid even unintentional deception and misrepresentation, and is fulfilling that duty the prosecutor must undertake careful study of his case and exercise diligence in its preparation, particularly where he is confronted with facts tending to cast doubt upon his witness' testimony.  The prosecutor's objective is justice; his role is not that of a mere advocate. The goal of justice is hardly satisfied by less."

298 F. Supp. 795, 808-809  (C.D. Cal. 1969) (emphasis added).

     JCM testified that she was with Mr. Miers against her will the entire month of August, 2013 and yet she apparently was not..  She took the oath in testifying that Mr. Miers raped her repeatedly during that time and yet the Jackson Memorial hospital rape attendant -- a woman who does not know Mr. Miers from Atom -- testified clearly that JCM was not raped. JCM's story is so incredible that the rape form admitted into evidence contains her admission that initially she claimed the last date of consensual sex was July 1, 2013 and yet we now know that she apparently had consensual sex with at least two men other than Mr. Miers since that time, unless of course it was these men who were repeatedly assaulting her during the period. Using the logic of former Chief Justice Coleman of the Eleventh Circuit in Chancey, her testimony was either false and misleading in violation of Napue or it was so unbelievable that judgment of acquittal must be sustained.

     The testimony of the Georgia police officer and Mr. Benton -- taken cumulatively -- merits a new trial in the event judgment of acquittal is not entered particularly considering these revelations about JCM's dishonesty. Perjury is not required to reverse a conviction under Napue and Giglio. Indeed, "[e]vidence is false if, inter alia, it is 'specific misleading evidence important to the prosecution's case in chief." Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1979) (citing Donnelly v. DeChristoforo, 416

-9-

U.S. 637, 647 (1974).

Given the false evidence and misleading case put forth by the government in this case, controlling caselaw in this Circuit requires an order granting a new trial unless the government persuades this Court that its violations were harmless beyond a reasonable doubt. Smith v. Sec'y, Dep't of Corr., 1103, 1110 (1995); United States v. Alzate, 47 F.3d 1103, 1110 (1995). It is submitted the government cannot satisfy this standard.

### C.   Brady Sentencing Issues

The obligation of the prosecutor to search for and turn over Brady material extends to the sentencing process. United States v. Weintraub, 871 F.2d 1257 (5th Cir. 1989). Indeed, Brady was a sentencing case. The Court in Brady held that all evidence favorable to an accused whether material to guilt or punishment must be supplied to the defendant. Brady v. Maryland, 373 U.S. at 87. Brady has a two pronged disclosure requirement but in the words of one federal judge, "prosecutors all to frequently forget about the second requirement for disclosure [punishment]." See, United States v. Feeney, 501 F. Supp. 1324 (D. Colo. 1980).

The suppressed evidence set forth above is absolutely necessary if for no other reason than it will permit Mr. Miers to disprove countless misstatements in the PSR and thus perhaps -- literally -- save his life. Accordingly, to the extent this Court has any disinclination against granting these Motions Mr. Miers respectfully requests the sentencing be continued and the government be ordered to produce unredacted Facebook records as well as all statements and video evidence in their constructive possession from the numerous law enforcement agencies they say are involved in this prosecution and that testified at trial, including, without limitation, Georgia, Florida and New York. Notably, the government has already turned over the so-called "murder book" for the case they said is open against Mr. Miers, however, they have curiously suppressed the remainder of law enforcement files to suit their needs. (The "murder book" shows that Mr. Miers had nothing whatever to do with any murder and that this too was a "dirty-up" strategy designed to inflame the jury.) In any event, as set forth above, these records must also be produced under Brady. Thus, Mr. Miers requests that any decision denying these Motions be made without prejudice so that he may use the materials to properly prepare a full record for the Court. The Court's attention is invited to the

fact that Mr. Miers is effectively without counsel who has neither seen Mr. Miers nor sought to have new counsel appointed for post-conviction litigation. Thus, these requests are reasonable in the event the substance of the instant Motions is denied.

WHEREFORE, Mr. Miers respectfully requests the Court reverse the convictions by granting judgment of acquittal. In the alternative, he requests the Court order a new trial and order the government to produce the withheld materials. In any event, if this case is to remain active, he respectfully requests the Court continue the sentencing in large part because there is no communication whatever with counsel Mr. Natale.

Dated: February 9, 2015

Respectfully submitted,

Timothy Miers, Pro Se

*FILED TO PREVENT INNEFFECTIVE ASSISTANCE OF COUNSEL*

-11-

Timothy Miers

Reg. No. 110310050

FDC Miami

P.O. Box 019120

Miami, Florida 33101

**USMS
INSPECTED**

10 FEB    PM    RECEIVED

FEB 1  15
12:   PM

LEGAL MAIL      LEGAL MAIL      LEGAL MAIL

United States District Court
Office of the Clerk
Room 8N09
400 North Miami Avenue
Miami, Florida 33128-7716

83128771699