**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 14-20642-Cr-MOORE(s)**

**UNITED STATES OF AMERICA,**

**v.**

**TIMOTHY MIERS,**

      **a/k/a "Vinny,"**

         **Defendant.**

_____/

**UNITED STATES'S SENTENCING MEMORANDUM RESPECTFULLY**
**REQUESTING THAT THE DEFENDANT BE SENTENCED TO LIFE**

COMES NOW, THE UNITED STATES OF AMERICA, by and through the undersigned Assistant United States Attorney, and hereby files this Sentencing Memorandum, and states as follows:

The United States moves this Court to impose a sentence of life imprisonment on the defendant, Timothy John MIERS, for the harm he has inflicted upon the victim in this case, J.C.M., and the potential harm he can cause to others, evident by his extensive criminal past. Specifically, the United States is requesting the imposition of a life sentence for Count 1 (Kidnapping), to run concurrent to ten (10) year statutory maximum sentences for Counts 2 and 3 (Interstate Travel for Domestic Violence) in order to punish the defendant for his criminal actions and deter him from destroying the lives of others in the future. The defendant's sentencing hearing is scheduled for Thursday, February 26, 2015.

MIERS is a 48 year old male. Of his 30 years as an adult, he has cumulatively spent nearly 10 years in criminal custody. As the Court can see from the Presentence Investigative

1

Report ("PSR"), when MIERS was not incarcerated, and free to interact with others, he spent that time wreaking havoc in society.  On four separate occasions, he tried to run over a police officer (PSR ¶42,51,58,59);  he tried to run over a person he was stealing from (PSR ¶45); he clobbered a police officer over the head with a tire iron while trying to escape a burglary (PSR ¶47); he choked and slapped a girlfriend at the age of 19 (PSR ¶44); he tampered with a different female witness by beating her (PSR ¶61); he left the scene of an accident (PSR ¶57); he stole on four separate occasions (PSR ¶41; 45; 48; 49); he committed burglary (PSR ¶43; 46; 47); he failed to appear for trial (PSR ¶50); had two other drug arrests (PSR ¶65,70); fled from a police officer (PSR ¶72); cracked a beer bottle on someone's head (PSR ¶66); was cited for contempt of court (PSR ¶67); and engaged in drug-related violations (PSR ¶52; 53; 54; 56; 59; 60).

Apart from these criminal acts, which, on their face, show that MIERS has (a) no respect for the law; (b) an inability to conform to society; and (c) a violent tendency, MIERS has shown that he has no respect for women and, more importantly, seeks to harm the women he meets along life's path.   Of note, MIERS has had three different restraining orders against him (PSR ¶67; 74, 75).  He has threatened to murder a woman (PSR ¶68); and tampered with a witness to prevent a woman from pursuing charges of violence against him (PSR ¶69).

Against this backdrop, the evidence was overwhelming that from 2006 until the present, he has destroyed the lives of several women.[1] The Court will recall the vivid testimony given at trial by K.R., his wife, and how MIERS destroyed her.  (*See* PSR ¶18.)  In addition, while completely dominating K.R., he terrorized M.T., who also testified at trial and whose harrowing account is set forth in PSR ¶17.  In the case that related to M.T.'s harm, MIERS tampered with witnesses and threatened them into testifying falsely.  As a result, MIERS' crime against M.T.

---

[1] Letter from K.R. and M.T. are attached hereto has Exhibits A and B for the Court's consideration in lieu of testimony at the sentencing hearing.

was not vindicated and she has, as she testified at trial, since felt that justice system failed her and somehow allowed MIERS to continue on a path where he would harm other women. (PSR ¶17.)

MIERS moved from harming K.R. and M.T. to harming other women.  Specifically, the Court heard from three witnesses at trial who described an incident involving Rachel D., an ex-girlfriend of MIERS.  She leapt from a fast moving vehicle to escape MIERS' violence.  (PSR ¶19.)  The road rash she suffered from that incident caused the skin on her back, legs and buttocks to be completely burned off.  Although Rachel D. recanted her initial statements against MIERS, the State of Florida proceeded with charges against MIERS for that act, largely relying on the same witness testimony that the Court heard and was convicted.  While MIERS was incarcerated for that crime, police questioned him about Dana Boshell, an ex-girlfriend of MIERS' from Tampa, Florida, who has been considered a "missing person" since July 2012. (PSR ¶20.)  She was last seen with MIERS at that time. (*Id.*)    Notably, MIERS, during his abuse of victim J.C.M., bragged about the abuse he had inflicted on all of these women, specifically naming Rachel D., and boasted about the woman in Tampa that he had killed (and "got away with").

After his release from prison in December 2013, MIERS went to live with Mercedes Reyes, the wife of one of his prison cellmates, in Miami, Florida.  Trial testimony established that it was at this time that MIERS began a relationship with Lucila Batista Hernandez  During cross-examination, the prosecution established that on June 15, 2014, Ms. Batista Hernandez questioned MIERS via text message about why he mistreated her at Mercedes' house when he threatened to hit her with a chair. (GX8) The trial testimony demonstrated that he left Ms. Batista Hernandez as he initiated interested in JCM, the victim in this case.

J.C.M. recounted, in excruciating detail, the terror that MIERS inflicted upon her. The Court saw and heard the video-recorded rape, in which MIERS received sexual pleasure from the horrific abuse of another person. JCM testified that MIERS said he was going to show her "his true self." The United States submits that, through that recording, the Court saw and heard firsthand what it is like to be with MIERS for just 20 minutes when he is his true self.

In conclusion, the United States argues that because MIERS has shown a steadfast and increasing pattern of extreme violence against others in his life, a clear disrespect of the law, and a dire need to be deterred from interacting with society, that a life sentence is the only just and fair sentence to impose in this case. Almost every year of MIERS' adult life resulted in a police encounter. Those contacts, substantively and temporally to each other, demonstrate that MIERS is unable to live without committing crimes. He is a threat to everyone he meets—all the time—especially police officers and women. In addition, MIERS has demonstrated that incremental punishment in the justice system does not deter him from future violence. Actually, he seems to view every encounter (particularly those that have resulted favorably to him) as a victory, from which he draws power and which emboldens him.

Undoubtedly, since no contact with the criminal justice system, or time of incarceration, seems to deter MIERS, it is inevitable that he will strike again given the chance. Moreover, there is a serious concern that he will kill one of the women that testified against him in federal court, as he has been able to, in the past, obtain a bond, threaten women and witnesses to recant statements, and have cases against him dismissed.

Therefore, the United States posits that the Court should confine MIERS for the rest of his life. A life sentence is within the guideline range. It reflects the seriousness of the offense. It promotes respect for the law in those that learn of the facts of the case and the sentence

imposed.  It may even promote a respect in the law in MIERS.  In a day and age when our society still somehow grapples with the concept of violence against women, a life sentence affords adequate deterrence to criminal conduct by those who are loathe to learn these lessons of their own accord, or who think to flout them.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY


By:   s/ Michael E. Gilfarb
      Michael E. Gilfarb
      Assistant United States Attorney
      Fla. Bar. NO. 957836
      99 N.E. 4th Street, Suite 600

5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on February 13, 2015, and that counsel for the defendant, AFPD Anthony Natale, received a true and correct copy via that manner.

s/ Michael E. Gilfarb
Michael E. Gilfarb
Assistant United States Attorney