## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



FILED BY ___AP___

Deputy Clerk

*Jul 6, 2017*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. **MIAMI**

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 06, 2017

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 15-11124-FF
Case Style: USA v. Timothy Miers
District Court Docket No: 1:14-cr-20642-KMM-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

_____

No. 15-11124

_____

District Court Docket No.
1:14-cr-20642-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY MIERS,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: April 28, 2017
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE 07/06/2017**

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11124
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20642-KMM-1

UNITED STATES OF AMERICA,

                                                    Plaintiff - Appellee,

versus

TIMOTHY MIERS,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 28, 2017)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Timothy Miers appeals his conviction and life sentence for one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and two counts of interstate domestic violence, in violation of 18 U.S.C. § 2261 (Counts 2 & 3). Mr. Miers argues that (1) the district court improperly admitted prior bad acts under Fed. R. Evid. 404(b); (2) the district court improperly instructed the jury regarding the interstate travel element of the interstate domestic violence counts; (3) the government presented insufficient evidence to support the interstate commerce element of all three counts; and (4) the district court improperly denied defense counsel's motion to withdraw at the sentencing hearing. Upon review of the record and consideration of the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

## A

A grand jury indicted Mr. Miers on charges of kidnapping and two counts of interstate domestic violence. He proceeded to trial.

During trial, Mr. Miers' girlfriend, J.C.M., testified that Mr. Miers was a long-distance truck driver who transported goods across the eastern United States. Mr. Miers invited J.C.M. to join him on several long-distance trips, and the two took six trips in total together. At the beginning of their sixth trip, on August 15,

2014, Mr. Miers learned that J.C.M. had been intimate with another man. Mr. Miers then became aggressive and hit her on her face, but they reconciled after he apologized.

Between August 17 and 19, Mr. Miers and J.C.M. traveled from New York to Boston, and then south toward Florida. J.C.M. testified that on August 17, Mr. Miers "changed totally," and threatened her and her family when she asked if should could be dropped off. Mr. Miers also told J.C.M. what he had done to his previous girlfriends, including that he had killed an ex-girlfriend and would do the same to J.C.M.; that he had thrown another ex-girlfriend, R.D., out of a moving truck; that he had hit yet another ex-girlfriend; and that he had beaten his ex-wife so hard that she became disabled.[1]

J.C.M. testified that for several days, Mr. Miers raped, bound, and physically and verbally abused her. On August 19, Mr. Miers stopped at a truck stop in Virginia, where he and J.C.M. entered private showers. There he locked her up against her will and strangled, beat, and spit on her. After leaving the truck stop, they continued to drive and Mr. Miers beat J.C.M. until she admitted her infidelity. Mr. Miers then strangled J.C.M., bound her with duct tape, gagged her, and told

---

[1] The government sought to introduce evidence of these prior acts at trial through testimony from the victims themselves, as well as three witnesses to the incident involving R.D. Over defense counsel's objection, the district court admitted most of the evidence pursuant to Fed. R. Evid. 404(b), but excluded evidence regarding the disappearance of an ex-girlfriend, for which Mr. Miers had not been charged, because its probative value was outweighed by the potential for prejudice.

her he was going to kill her. The abuse continued, and Mr. Miers filmed while he raped and demeaned her. J.C.M. was finally able to escape when they arrived in Medley, Florida, on August 21, 2014.

**B**

The jury found Mr. Miers guilty on all counts. The PSI recommended a base offense level of 32; a two-level enhancement because J.C.M. sustained serious bodily injury; a one-level enhancement because J.C.M. was not released before seven days had elapsed; and a six-level enhancement because J.C.M. was sexually exploited. The PSI recommended a total offense level of 41 and a criminal history category of VI, resulting in an advisory guideline range of 360 months' imprisonment to life imprisonment.

Mr. Miers' counsel moved to withdraw as counsel after objections to the PSI were due, but before sentencing, citing a breakdown in communication. The district court held a hearing and denied the motion. It also denied a continuance requested by Mr. Miers.[2]

The district court then proceeded to sentencing. During sentencing, Mr. Miers' counsel did not make any objections to the PSI, explaining that when he attempted to meet with Mr. Miers regarding the PSI, Mr. Miers had refused and expressed concerns with his representation. The district court struck Mr. Miers'

---

[2] We note our concern that it appears the exchange between the defendant, his counsel, and the district court regarding details of the representation occurred in the presence of the government.

4

*pro se* objections to the PSI and did not permit him to present those objections because he was represented by counsel. The district court found that all three recommended enhancements applied, and sentenced Mr. Miers to life imprisonment as to Count 1, and 120 months' imprisonment as to Counts 2 and 3, to be served concurrently.

## II

Mr. Miers first argues that the district court improperly admitted evidence of prior incidents involving his ex-girlfriends and ex-wife. "We review for an abuse of discretion a district court's admission of evidence of a defendant's prior bad acts under Rule 404(b)." *United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir.).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character[,]" but it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1) and (2). For a bad act to be admissible under Rule 404(b), "(1) the evidence must be relevant to an issue other than the defendant's character; (2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence

must not be substantially outweighed by its undue prejudice." *Holt*, 777 F.3d at 1266 (internal quotation marks and citation omitted).

Here, the evidence was admissible under Rule 404(b) to show Mr. Miers' intent and absence of mistake. With regard to the first prong of the Rule 404(b) test, Mr. Miers put his intent at issue by pleading not guilty and by contesting J.C.M.'s lack of consent. *See United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."). "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *Id.* Indeed, "[s]imilarity of the extrinsic acts to the offenses with which [the defendant] is charged is the standard by which relevancy is measured under [R]ule 404(b)." *United States v. Williams*, 816 F.2d 1527, 1531 (11th Cir. 1987). Here, there were several important similarities between Mr. Miers' alleged abuse of J.C.M. and his prior extrinsic acts—namely, his alleged intent to harm, restrain, and/or dominate these women.

As to the second prong, the government sufficiently established the extrinsic acts. It presented testimony from the victims and the witnesses to R.D.'s alleged

6

assault, as well as J.C.M.'s testimony that Mr. Miers himself admitted that he had committed those acts.

With regard to the third prong, the determination of whether the probative value of the evidence is not substantially outweighed by its undue prejudice "lies within the sound discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense." *Id.* "Factors to be considered include whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *Edouard*, 485 F.3d at 1345. Moreover, "extrinsic evidence of similar acts will possess great probative value if the defendant's intent is in issue and if the government lacks other strong evidence of defendant's intent." *Williams*, 816 F.2d at 1532. "[D]etermining prejudice to outweigh probativeness . . . is an exceptional remedy" to be "invoked sparingly." *Id.*

Here, Mr. Miers contested intent, and the details of alleged prior abusive acts were similar to his alleged acts toward J.C.M. Further, the prior acts were the only evidence the government had to refute Mr. Miers' theory of consent aside from J.C.M.'s own testimony and the video of her alleged abuse, increasing the probative value of the extrinsic evidence. Finally, the district court provided a limiting instruction regarding the extrinsic evidence, thus mitigating any unfair

prejudice. *See Edouard*, 485 F.3d at 1346 ("[A]ny unfair prejudice possibly caused by admitting evidence of Edouard's prior smuggling activities was mitigated by the district court's limiting instruction to the jury."). The district court therefore did not abuse its discretion by permitting the admission of certain prior acts under Rule 404(b).

## III

Mr. Miers' second argument is that the district court improperly instructed the jury on the interstate travel element of the interstate domestic violence offense. The district court, over defense counsel's objection, instructed the jury as follows: "The Government must prove that the Defendant possessed the intent to kill, injure, harass or intimidate J.C.M. concurrently with the interstate commerce. But the Government does not have to prove that this intent was the significant or predominant reason that the Defendant crossed state lines. In other words, the Government only has to prove that the Defendant traveled in interstate commerce and, while doing so, intended to kill, injure, harass or intimidate J.C.M." D.E. 114 at 202.

We review *de novo* "the district court's jury instructions when determining whether they misstate the law or mislead the jury to the prejudice of the objecting party." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). "We give the district court wide discretion as to the style and wording employed in the

instructions, ascertaining that the instructions accurately reflect the law." *Id.* We will reverse a district court because of an erroneous instruction only if we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. Felts*, 579 F.3d 1341, 1342–43 (11th Cir. 2009).

The district court did not misstate the law so as to leave a "substantial and ineradicable" doubt that the jury was misguided in its deliberations. Indeed, the plain language of the statute does not require that the defendant's intent be the significant and predominant reason for the travel. It requires only that the defendant "travel in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate." 18 U.S.C. § 2261(a)(1).[3] *See also United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002) (interpreting identical language in 18 U.S.C. § 2261A to mean only that the defendant must have intended to harass or injure at the time he crossed the state line). Accordingly, the district court's instruction to the jury was proper.

## IV

Mr. Miers' third argument is that the government presented insufficient evidence to satisfy the "interstate commerce" element of all three charged offenses

---

[3] A defendant violates the interstate domestic violence statute if he "travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner . . . ." 18 U.S.C. § 2261(a)(1).

9

and the "initial abduction" element of the kidnapping charge. "We review *de novo* whether sufficient evidence supports a jury's verdict in a criminal trial, taking the evidence in the light most favorable to the government." *Holt*, 777 F.3d at 1259. We therefore "resolve any conflicts in favor of the government, draw all reasonable inferences that tend to support the prosecution's case, and assume that the jury made all credibility choices in support of the verdict." *Id.* The government's evidence "is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.*

As to the kidnapping count, to support a conviction under 18 U.S.C. § 1201(a), the government must demonstrate that the defendant (1) knowingly and willfully (2) transported in interstate commerce (3) an unconsenting person who was (4) held for ransom, reward, or otherwise. *See United States v. Lewis*, 115 F.3d 1531, 1535 (11th Cir. 1997). With regard to the last element, "the prosecution need only establish that the defendant acted for *any* reason which would in *any* way be of benefit." *Id.* at 1536 (emphasis in original).

J.C.M. testified that Mr. Miers inflicted violent acts upon her under threat of death to her and her family for his own sexual gratification. *See id.* (concluding that the language "ransom, reward, or otherwise" encompassed an explicit admission that defendant kidnapped victim for "companionship"). The evidence also supported a finding that Mr. Miers willfully transported J.C.M. across state

lines from Virginia to Florida. A reasonable jury could therefore conclude that the evidence established that Mr. Miers kidnapped and willfully transported J.C.M.

The government also presented sufficient evidence with regard to the interstate domestic violence counts under 18 U.S.C. §§ 2261(a)(1) & (2). The statute requires that the defendant "travel in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate," *see* § 2261(a)(1), or that the defendant "causes . . . a dating partner to travel in interstate . . . commerce . . . by force, coercion, duress, or fraud, and . . . in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that . . . dating partner," *see* § 2261(a)(2). The evidence sufficiently supported a finding that Mr. Miers communicated several threats to J.C.M., abused her, and forced her to continue with him from Virginia to Florida. Accordingly, a reasonable jury could conclude that Mr. Miers formulated the requisite intent at the time he crossed state lines, and abused J.C.M. in the course of such travel, therefore satisfying the interstate commerce element.

## V

Mr. Miers' final argument is that the district court erroneously denied his counsel's motion to withdraw. We review the denial of a motion for new counsel for abuse of discretion. *See United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). "In making this determination, several factors that should be considered

by a reviewing court have been identified, the most relevant of which include: 1) the timeliness of the motion; 2) the adequacy of the court's inquiry into merits of the motion; and 3) whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." *Id.*

It is not entirely clear that the district court conducted an adequate inquiry into the merits of the motion, and whether there was a total breakdown in communication, particularly given that counsel failed to make any arguments or objections regarding the recommendations set forth in the PSI. Even assuming that the district court abused its discretion by denying the motion, however, Mr. Miers "must still demonstrate that, in the context of the sentencing hearing, he was somehow prejudiced by trial counsel continuing to represent him." *Id.* To demonstrate prejudice, he "must show that counsel's performance was not within the range of competence demanded of attorneys in criminal cases and that but for counsel's continued representation at the sentencing hearing, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). *See also United States v. Lott*, 310 F.3d 1231, 1251 (10th Cir. 2002) (observing that, on appeal of the denial of a motion for new counsel, the Eleventh Circuit applies the more onerous *Strickland* prejudice analysis—which requires the *defendant* to show that but for the counsel's deficiencies, the result of the

proceeding would have been different—in lieu of a *Chapman* harmless error standard—which requires the *government* to prove beyond a reasonable doubt that the error was harmless).[4]

Mr. Miers argues that his counsel should have requested a downward variance below the guideline range, and that the § 2A4.1(b)(4)(B) enhancement for not releasing the victim before more than seven days had elapsed should not have applied. As noted earlier, counsel did not object to the PSI, and the district court did not allow Mr. Miers to state his own objections. Mr. Miers maintains that the absence of objections to the PSI and the failure to request a downward variance prejudiced him.

Even if counsel's failure to object to the PSI constituted performance that was not within the requisite range of competence, we conclude that the sentence would have been the same. First, the district court specifically addressed each of the enhancements in the PSI and found that "substantial and overwhelming" evidence supported the application of each of the enhancements. *See* D.E. 119 at 24. Second, although we agree with Mr. Miers that the one-level enhancement pursuant to § 2A4.1(b)(4)(B)—for holding J.C.M. for seven days or more—likely did not apply because the kidnapping began at the earliest on August 17, 2014, *see*

---

[4] We note that other circuits have disagreed with the standard we apply to our review of such motions, and instead conduct the harmless error analysis. *See, e.g.*, *Lott*, 310 F.3d at 1251–52 (citing cases).

*Lewis*, 115 F.3d at 1535 (kidnapping under 18 U.S.C. § 1201(a) requires the holding of an "unconsenting person"), that would have left Mr. Miers with an offense level of 40 and an identical guidelines range of 360 months' imprisonment to life imprisonment. Third, the district court specifically considered the 18 U.S.C. § 3553(a) factors, and emphasized that "those factors would be considered by the Court in considering a sentence outside the otherwise applicable guideline range that would support the Court's judgment or sentence in this case." *Id.* at 33. The district court noted that it had taken into account the nature and circumstances of the offense, including "the defendant's cruel, brutal[,] and degrading conduct towards the victim." *Id.* The district court further considered Mr. Miers' history and characteristics, describing in detail his lengthy criminal history, and ultimately concluding that Mr. Miers has had no respect for the law throughout his entire adult life, and that "[i]t is clear the only way to deter this defendant is to imprison him; otherwise he will commit further crimes." *Id.*

The district court's handling of the motion to withdraw, and the fact that the sentencing hearing proceeded without any defense objections to the PSI, are matters of concern. Nevertheless, the record does not lead us to believe that the outcome of the sentencing hearing would have been different if other counsel had represented Mr. Miers. Accordingly, even if the district court abused its discretion by denying counsel's motion to withdraw, no demonstrable prejudice resulted.

## VI

For the reasons stated above, Mr. Miers' conviction and sentence of life imprisonment are affirmed.

**AFFIRMED.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 28, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-11124-FF
Case Style:  USA v. Timothy Miers
District Court Docket No:  1:14-cr-20642-KMM-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion